UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ALBERTO XOLOT,<br><br>                Plaintiff,<br><br>v.<br><br>THE CHEESECAKE FACTORY RESTAURANTS, INC.,<br><br>                Defendant. | Case No. 25-CV-11-JPS<br><br>**ORDER** |

Before the Court is Defendant The Cheesecake Factory Restaurants, Inc.'s ("Defendant") motion to stay proceedings and compel arbitration. ECF No. 18. Also before the Court are Plaintiff Alberto Xolot's ("Plaintiff") motion to compel discovery, ECF No. 23, and Defendant's expedited motion to stay discovery and pretrial deadlines pending resolution of its motion to stay compel arbitration, ECF No. 25. For the reasons set forth below, the Court will grant Defendant's motion to compel arbitration and will stay the proceedings in this case. It will further deny both Plaintiff's motion to compel discovery and Defendant's motion to stay discovery and pretrial deadlines as moot.

1. **BACKGROUND**[1]

This action arises out of Plaintiff's employment with Defendant from 2011 to 2022. *See generally* ECF No. 1; ECF No. 18 at 3. Specifically, Plaintiff

---

[1]The Court considers both the pleadings and the facts as set forth in the parties' declarations in support of their positions, ECF Nos. 1, 11, 19, 20, 21-1, as is proper when considering a motion to compel arbitration. *Walton v. Uprova Credit LLC*, 722 F. Supp. 3d 824, 831 (S.D. Ind. 2024) ("In evaluating an arbitration

Page 1 of 13
Case 2:25-cv-00011-JPS   Filed 10/06/25   Page 1 of 13   Document 26

alleges that, in 2021 and 2022, he was the victim of sexual harassment and battery from a supervisor while working at Defendant. ECF No. 1 at 3–4. When Plaintiff reported this to Defendant, he alleges that he was wrongfully terminated in retaliation. *Id.* at 5.

When Defendant hires a new employee, the employee goes through an onboarding process and is provided "copies of important documents," including Defendant's Employee Handbook. ECF No. 20 at 3. Each individual restaurant self-audits this onboarding process monthly and Defendant's corporate entity audits it annually. *Id*. In accordance with this audited onboarding process, which is completed by "[a]ll employees . . . at the start of their employment," when Defendant hired and onboarded Plaintiff in 2011, he should have received a copy of the "Employee Handbook." ECF No. 19 at 2. In 2011, when Plaintiff was onboarded, the Employee Handbook included a two-page acknowledgement form. *Id*. That acknowledgement form contained an arbitration agreement. *Id.* at 2–3 ("If I . . . determine that the Company's internal procedures for handling claims . . . have not resulted in a mutually acceptable resolution of disputes between me and the Company, I agree to participate in arbitration proceedings." (quoting ECF No. 19 at 71) (emphasis omitted to reflect text of original document)).

---

agreement[, for a motion to compel arbitration,] courts may properly consider relevant exhibits and affidavits." (citing *Reineke v. Circuit Cty. Stores, Inc.*, No. 03 C 3146, 2004 WL 442639, at *1 (N.D. Ill. Mar. 8, 2004))); *see Kass v. PayPal Inc.*, 75 F.4th 693, 697–99 (7th Cir. 2023) (holding that a plaintiff's sworn declaration that she had never seen an agreement containing the arbitration clause created an issue of fact that required an evidentiary hearing).

For brevity, citations to facts introduced in this section are omitted in later analysis.

Defendant claims it was its policy in 2011 to "inform onboarding employees that their offer of employment and continued employment was expressly conditioned on them agreeing to the [a]rbitration [a]cknowledgment." ECF No. 18 at 3 (citing ECF No. 19 at 3). However, Defendant is unable to produce an acknowledgement form signed by Plaintiff at the time of his hiring. *Id.* at 6 ("[Plaintiff's] original signed agreement to arbitrate could not be located . . . .").

During Plaintiff's employment with Defendant, Defendant updated its Employee Handbook, including the agreement to arbitrate, three times. ECF No. 20 at 1. Each time Defendant updated its Employee Handbook, employees were alerted with a notification—which "encouraged employees to read the Employee Handbook and to contact their General Manager" with questions—on the website where they viewed their schedules. *Id.* at 1–2. Employees had to click through the notification in order to view their schedule and other important information. *Id.* at 2 ("It would be impossible for an employee, including [Plaintiff], to access their schedule or earning statements without seeing and clicking through the home screen notification."). Management also alerted staff to Employee Handbook updates during daily staff meetings. *Id*. at 3.

In 2015, Defendant provided Plaintiff with an updated copy of the Employee Handbook, which included a new acknowledgement form. ECF 20 at 3–4. The 2015 acknowledgement form contains nine paragraphs, each with a blank for an employee's initials. *Id.* at 73–74. The third paragraph, which Plaintiff initialed, makes clear that Plaintiff was an at-will employee. *Id.* at 73 ("I further acknowledge and understand that my employment with The Cheesecake Factory is, and at all times remains, at will."). The last two paragraphs—the arbitration agreement and a food safety rule—are on a

Page 3 of 13
Case 2:25-cv-00011-JPS   Filed 10/06/25   Page 3 of 13   Document 26

separate page with the signature block. *Id.* at 74. Plaintiff states that he does not recall receiving the 2015 Employee Handbook or signing the corresponding acknowledgement form. ECF No. 21-1 at 1. Plaintiff's initials appear next to the first seven paragraphs in the acknowledgment form, but not next to the last two—one of which is the arbitration agreement. ECF No. 20 at 73–74. Plaintiff appears to have signed and dated at the bottom of the acknowledgement form. *Id.* at 74. The arbitration agreement in the 2015 acknowledgement form stated:

> I recognize that differences may arise between me and the company during or following my employment with the company. I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the company. If I, or the company, determine that the company's internal procedures for handling claims . . . Have not resulted in a mutually acceptable resolution of disputes between me and the company, I agree to participate in arbitration proceedings in my individual capacity, and not as a plaintiff, claimant or class member in any purported class action collective action or other representative or joint proceeding, in accordance with the terms of the mutual agreement to arbitrate claims.

*Id.* at 74 (capitalization modified).

Defendant terminated Plaintiff as an employee on February 16, 2022. ECF No. 19 at 2. Plaintiff filed this case in January 2025, alleging that Defendant committed common law torts for Intentional Infliction of Emotional Distress ("IIED"), Negligent Hiring/Supervision/Retention, and Assault and Battery. ECF No. 1. Defendant answered the complaint in February 2025, asserting a number of affirmative defenses. ECF No. 11 at 6–8. Defendant asserted, inter alia, that "[a] valid and enforceable Arbitration Agreement covering Plaintiff's claims exists between [Defendant] and Plaintiff. As such, the Arbitration Agreement requires Plaintiff to bring his

claims in arbitration, and [Defendant] intends to enforce the Arbitration Agreement either voluntarily or through a Motion to Compel Arbitration." *Id.* at 6. The parties jointly filed a Rule 26(f) report in March 2025, where Defendant stated that it was "assessing whether a motion to compel arbitration [wa]s appropriate" and that it intended to enforce the parties' arbitration agreement, "if warranted." ECF No. 13 at 2. Defendant asserts that it asked Plaintiff if he would consent to arbitration, and Plaintiff refused. ECF No. 15 at 6. In May 2025, Defendant filed its first motion to dismiss, or in the alternative to stay proceedings, and compel arbitration. *See generally id.* The Court denied the motion without prejudice for failing to comply with the Court's Pretrial Order and because a Rule 12(b)(3) motion is not the correct avenue for compelling arbitration. ECF No. 16. Defendant filed the instant renewed motion to compel arbitration proceedings a month later. ECF No. 18.

### 2. LEGAL STANDARD

The Federal Arbitration Act ("FAA") was enacted as a means of reversing "the judiciary's longstanding refusal to enforce agreements to arbitrate[,]" and placing arbitration agreements on "the same footing as other contracts." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010). To further this goal, the FAA requires the enforcement of valid, written arbitration agreements. 9 U.S.C. § 2; *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2 and *Circuit Cty. Stores v. Adams*, 532 U.S. 105, 111–12 (2001)). The FAA further "provides for stays of litigation when an issue presented in the case is referable to arbitration." *Tinder*, 305 F.3d at 733 (citing 9 US.C. § 3 and *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002)).

A party seeking to enforce an arbitration agreement may file a motion to compel arbitration and stay litigation pending arbitration. 9 U.S.C. §§ 3, 4. "To compel arbitration, a party must show (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Kass*, 75 F.4th at 700 (citing *Druco Rests., Inc. v. Steak N Shake Enters., Inc*, 765 F.3d 776, 781 (7th Cir. 2014)). Similar to summary judgment motions, a party opposing arbitration must demonstrate that a genuine dispute of material fact exists regarding one of the requirements for compelling arbitration. *Tinder*, 305 F.3d at 735.

Finally, because arbitration agreements are contracts, enforcement follows state contract law. *Id.* at 733 (citing 9 U.S.C. § 2 and *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Because all events relevant to the present dispute occurred in Wisconsin, including the dissemination of and Plaintiff's alleged consent to the arbitration agreement, Wisconsin contract law governs whether the agreement is valid. *Id.* (citing *Michalski v. Circuit Cty. Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999)).

### 3. ANALYSIS

Plaintiff appears to concede that his dispute falls within the scope of Defendant's purported arbitration agreement and that he has refused to proceed to arbitration, *see generally* ECF No. 21 (not contesting either element), but advances two arguments for why he cannot be compelled to arbitrate. First, Plaintiff contends that no valid arbitration agreement existed between Plaintiff and Defendant. *Id.* at 7–11. Second, Plaintiff asserts that, even if a valid arbitration agreement does exist, Defendant has waived its right to arbitrate. *Id.* at 3. For the reasons stated herein, both arguments fail.

### 3.1 Existence of a Valid Arbitration Agreement

Plaintiff argues that he cannot be compelled to arbitrate because Defendant does not meet its burden in demonstrating that there is a valid arbitration agreement. ECF No. 21 at 7–11. First, Plaintiff highlights that Defendant has admitted that it cannot produce a 2011 acknowledgement form signed by Plaintiff when he first began working for Defendant, nor does Defendant offer any explanation for why it cannot locate such an acknowledgement if one indeed exists. *Id.* at 8–9. Second, Plaintiff argues that the absence of Plaintiff's initials next to the arbitration clause in the 2015 acknowledgement form indicates that he "clearly did not agree to be bound by arbitration." *Id.* at 10. Plaintiff also argues that he does not remember signing the acknowledgment form at all. *Id.* at 10–11.

In *Tinder*, the Seventh Circuit considered a similar claim that an employer cannot unilaterally implement an arbitration program during the course of employment without input from their at-will employees. 305 F.3d at 734–35. The Seventh Circuit, relying on Wisconsin law, held that because "at-will employees are free to quit their jobs at any time, [they] give adequate consideration for employer promises that modify or supplant the at-will employment relationship by remaining on the job." *Id.* at 734 (citing *Ferraro v. Koelsch*, 368 N.W.3d at 673 n.5 (Wis. 1985) and *Pincus v. Pabst Brewing Co.*, 893 F.2d 1544, 1549 (7th Cir. 1990)); *id.* (holding that Plaintiff's decision to stay on the job after a new arbitration program was rolled out showed her mutual promise to arbitrate disputes with her employer). Further, the court in *Tinder* held that the FAA "requires arbitration agreements to be written," but "it does not require them to be signed" and "an employee's written acceptance of an employer's policies is not a prerequisite to enforceability under Wisconsin law." *Tinder*, 305 F.3d at 736

(first citing *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (6th Cir. 1987) then citing *Ferraro*, 368 N.W.2d at 669 n.2).

In the present case, it is irrelevant whether Defendant can produce a 2011 acknowledgement form signed by Plaintiff, because employers are allowed to modify or supplant policies during at-will employment in Wisconsin. *See Runzheimer Int'l, Ltd. v. Friedlen*, 862 N.W.2d 879 ¶ 19 (Wis. 2015) (citing *Tinder*, 305 F.3d at 734). The record supports that Defendant presented Plaintiff with its current arbitration agreement by way of the acknowledgment form to the new Employee Handbook in 2015. ECF No. 20 at 3–4; *id.* at 73–74. It is true that Plaintiff did not initial next to the specific arbitration provision in the 2015 acknowledgement form, *id.* at 74, but that is not dispositive. Plaintiff's signature at the bottom of the acknowledgement form—the same page that contains the arbitration agreement—demonstrates that he was aware of the form and its contents, including the arbitration agreement. *Id.* at 74. Plaintiff's mere claim that he cannot recall receiving the 2015 Employee Handbook or signing its acknowledgment form does not raise an issue of triable fact to defeat Defendant's motion. *Ward v. Charter Commc'ns*, 734 F. Supp. 3d 843, 848 (E.D. Wis. 2024) ("An employee cannot avoid arbitration simply by claiming that []he does not recall seeing or reviewing the arbitration materials without identifying specific evidence of a material factual dispute.").

Further, Plaintiff's initials are next to the at-will employment provision, providing consideration for employer conditions—such as an arbitration agreement. *Id.* at 73. Plaintiff continued his at-will employment at Defendant long after the 2015 acknowledgement form, and the arbitration agreement therein, was disseminated and signed. His continued

employment provides consideration for the new terms of the Employee Handbook. *See Tinder*, 305 F.3d at 734; *Schultz v. Epic Sys. Corp.*, 376 F. Supp. 3d 927 (W.D. Wis. 2019) ("[R]emaining employed on the effective date of the Arbitration Agreement provide[s] sufficient consideration . . . .").

Because Plaintiff has not raised a genuine dispute of material fact as to the issue, the Court holds that there was a valid arbitration agreement under Wisconsin law between Plaintiff and Defendant that was effective during the allegations that gave rise to Plaintiff's claims.

### 3.2 Waiver of Right to Arbitrate

Plaintiff also contends that, even if a valid arbitration agreement does exist, Defendant has waived its right to arbitrate. ECF No. 21 at 3–6. The right to arbitrate is like any other contractual right and can be waived. *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 499 (7th Cir. 2018) (citing *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 590 (7th Cir. 1992)). Because Defendant has not expressly waived arbitration, in order to rule in favor of Plaintiff here, the Court must instead infer that it has waived its right to arbitrate. *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). The relevant determination is whether Defendant has, based on the totality-of-the-circumstances, "acted inconsistently with the right to arbitrate." *Id.* (*Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)). Factors the Court considers include Defendant's "diligence, or lack thereof[,] . . . [and] whether the [party moving to compel arbitration] participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id.* (first citing *Cabinetree of Wis. v. Kraftmaid Cabinetry*, 50 F.3d 388, 391 (7th Cir. 1995) then citing *St. Mary's*, 969 F.2d at 589–91).

Plaintiff argues that Defendant waived its right to arbitrate by waiting five months to file the instant motion, answering the complaint, and jointly filing a Rule 26(f) scheduling report. ECF No. 21 at 5. Defendant responds that it has raised its ability and intent to compel arbitration early and continuously. ECF No. 22 at 2–4. The Court agrees with Defendant.

Defendant mentioned its right to arbitrate in its answer and raised it again in the parties' joint Rule 26(f) report. Defendant waited only four months before initially demanding arbitration. A four-month delay, especially when accompanied by previous assertions of an intent to arbitrate, does not automatically waive the right to arbitrate. *Kawasaki*, 660 F.3d at 996 (reasoning that a party's candidness about their intent to arbitrate throughout the litigation made it difficult for an opposing party to claim they were unaware of a desire to arbitrate and instead showed an intent to arbitrate); *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 871 (E.D. Wis. 2006) (holding that a party raising arbitration as an affirmative defense and then waiting to compel arbitration until after the filing of a second amended complaint did not waive the right to arbitrate); *c.f. Smith*, 907 F.3d at 500 (waiting eight months to demand arbitration with no mention of an intent to arbitrate in an answer, then waiting another five months after party's refusal to bring motion to compel, qualified as acting inconsistently with the right to arbitrate).

Throughout the litigation Defendant has also refrained from actively participating in discovery. ECF No. 22 at 3; *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 ("[L]engthy delay can lead to an implicit waiver of arbitration. . . . But such delay is normally evidenced by substantial participation in the opposing party's litigation." (citing *Grumhause v. Comerica Sec., Inc.*, 223 F.3d 648, 651 (7th Cir. 1000) and *Cabinetree*, 50 F.3d at

390; and *St. Mary's*, 969 F.2d at 587, 590–91)); *c.f. Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418, 427 (7th Cir. 2025) (holding that producing thousands of documents, informing the court that it was abiding by discovery deadlines, and responding to status updates constituted an implicit waiver of arbitration).

Defendant has acted consistently with its intent to enforce its right to arbitrate and has not inexcusably delayed in moving to compel. Accordingly, the Court will not infer that Defendant waived its right to compel arbitration.

### 4. MOTIONS TO COMPEL DISCOVERY AND TO STAY PROCEEDINGS PENDING RESOLUTION OF THE MOTION TO COMPEL

Also before the Court is Plaintiff's recent motion to compel discovery responses. ECF No. 23. While this motion is not yet fully briefed, because the Court will grant Defendant's motion to compel arbitration, it will also stay and administratively close this case. Accordingly, it will deny Plaintiff's motion to compel discovery as moot. The Court will deny Defendant's motion to stay proceedings pending resolution of its motion to compel, ECF No. 25, for similar reasons. Because this Order resolves Defendant's motion to compel, the motion is moot and will be denied as such.

### 5. CONCLUSION

Because Plaintiff has not introduced any genuine issue of material facts as to the requirements to compel arbitration, and because the Court has found that Defendant has not waived its right to enforce the arbitration agreement, the Court will grant Defendant's motion to compel arbitration and stay the proceedings in this case. It will order Plaintiff to arbitrate his

dispute with Defendant and will further deny Plaintiff's motion to compel discovery as moot. The Court will administratively close this case while the underlying dispute is being arbitrated. Within two weeks of the completion of the arbitration proceedings, Plaintiff must file a status report. If Plaintiff fails to do so, this case will be dismissed without prejudice.

Accordingly,

**IT IS ORDERED** that Defendant The Cheesecake Factory Restaurant, Inc.'s motion to stay proceedings and compel arbitration, ECF No. 18, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff Alberto Xolot is **COMPELLED** to arbitrate his claims in this action with Defendant The Cheesecake Factory Restaurant, Inc.;

**IT IS FURTHER ORDERED** that Plaintiff Alberto Xolot's motion to compel discovery, ECF No. 23, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant The Cheesecake Factory Restaurant, Inc.'s expedited motion to stay discovery and pretrial deadlines pending resolution of its motion to compel, ECF No. 25, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **STAYED** pending the outcome of the parties' arbitration;

**IT IS FURTHER ORDERED** that the Clerk of Court **ADMINISTRATIVELY CLOSE** this case; and

**IT IS FURTHER ORDERED** that Plaintiff Alberto Xolot shall **FILE** a status report within two (2) weeks of the ultimate outcome of the parties' arbitration proceedings; failure to timely do so will result in dismissal of this case without prejudice for failure to prosecute.

Dated at Milwaukee, Wisconsin, this 6th day of October, 2025.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge